UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**TRUDY CALLAHAN,**

       **Plaintiff,**

**vs.**                                **Case No.: 3:16-cv-1348-J-20JBT**

**CITY OF JACKSONVILLE, FLORIDA,**

       **Defendant.**

_____/

## DEFENDANT'S DISPOSITIVE MOTION FOR
## SUMMARY JUDGMENT AND MEMORANDUM OF LAW

Defendant, CITY OF JACKSONVILLE, FLORIDA (the "City" or "Defendant"), by and through the undersigned counsel, pursuant to Rule 56, Fed. R. C. P., hereby requests that the Court grant summary judgment in Defendant's favor.

## INTRODUCTION

This action arises from a three-count Complaint (Doc. 1) filed by Plaintiff, Trudy Callahan, alleging retaliation, hostile work environment and retaliatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* ("Title VII"). Compl. ¶¶ 6-60, 63-79.[1] Plaintiff, who is a police officer with the Jacksonville Sheriff's Office ("JSO"), alleges that Defendant subjected her to a hostile work environment based on gender by selectively enforcing JSO's disciplinary policy and transferring her. *Id.* Plaintiff also claims that, after she complained about the differential treatment, Defendant retaliated against her and subjected her to a retaliatory hostile work environment. *Id.* Summary judgment should be granted because Plaintiff cannot satisfy the legal standard of either a discriminatory or a

---

[1] In its Order denying Defendant's motion to dismiss, the Court ruled that Plaintiff's claims may include incidents that began in August 2011. (Doc. 15).

retaliatory hostile work environment claim, including showing that the conduct was severe or pervasive.  Even construing the record in the light most favorable to her, Plaintiff's claims fall far short of the stringent test for actionable harassment, particularly in the context of a law enforcement agency and the Sheriff's duty to maintain order and discipline.  Plaintiff's retaliation claim fails because she cannot show causation or that she suffered a materially adverse action.  She also cannot establish that Defendant's legitimate, non-retaliatory reasons for its actions were pretextual.  Therefore, there is no genuine issue of material fact or law entitling Plaintiff to recover on her claims against Defendant.

## I.   STATEMENT OF UNDISPUTED FACTS[2]

### A.   Plaintiff's Career and Position with JSO

Plaintiff has been employed with JSO since March 20, 1996.  Pl. Dep. 22:18-22.  JSO is a paramilitary organization; therefore, police officers are required to obey the directives of the Sheriff, the head of the agency, and follow the chain of command.  *Id.* at 286:24-287:10; 292:12-14; Ivey Dep. 50:17-51:13; 92:10-93:5.  In the patrol unit, a lieutenant or "watch commander" supervises a squad of two sergeants and 12 to 15 patrol officers.[3]  Pl. Dep. 35:22-39-13; 39:10-41:23.  The higher up an officer rises in the chain of command, the more responsibility the officer is charged with, therefore JSO holds a lieutenant more accountable than a sergeant.  *Id.* at 51:24-52:1. A lieutenant may delegate some duties to a sergeant, but ultimately she remains responsible for the watch commander's duties.  *Id.* at 53:5-54:4: Ivey Dep. 112:7-113:20; Brown

---

[2]The uncontested facts are taken from the sworn deposition testimony of Trudy Callahan, Patrick Ivey, Sr., and Mechelle Soehlig and the declarations of Patrick Ivey, Sr., Ronald Lendvay, Adam Brown and Dwain Senterfitt, filed herewith as Exhibits 1 to 7.

[3]To provide police services seven days a week/24 hours per day, JSO assigns patrol officers to a geographical area called a "zone," to one of six different shifts and to a time period called a "watch."  Senterfitt Dec. ¶ 4; Pl. Dep. 39:14-41:6; 172:23-175:21.  The officers of a zone are assigned to either the Blue or Gold Squad and work an on/off duty schedule of 5 days on/5 days off, 4 days on/5 days off, and 5 days on/4 days off.  *Id.*  When the Blue Squad is on duty, the Gold Squad is off duty and vice-a-versa.  *Id.*

Dec. ¶ 6.  Plaintiff is currently assigned to the evening shift on Zone 1 and her rank is Lieutenant, Patrol.  Pl. Dep. 35:20-21; 41:24-42:24.  As a lieutenant, Plaintiff is required to know JSO's orders, written directives, policies, memoranda and legal bulletins.  Ivey Dep. 92:10-93:5; 97:17-103:2. After starting as a patrol officer, Plaintiff was promoted to sergeant in 2006 and lieutenant in 2011. Pl. Dep. 23:18-24:15; 27:1-3; 28:5-18. Since 2011, Plaintiff has received at least satisfactory or "baseline" performance reviews, she has never been demoted or failed to receive a pay raise (i.e., a step increase), and she currently earns almost $110,000 per year.  *Id.* at 235:12-4; 270:10-280:14, Ex. 21, 29-37.

### B.      Plaintiff's Counseling and Disciplinary History

As a law enforcement agency, JSO has a duty to investigate all complaints and allegations of officer misconduct, regardless of the source of the complaint or whether it is ultimately determined to be unfounded, and to take corrective action if warranted.  Ivey Dep. 33:14-35:5; 105:24-108:16.[4]  JSO's police officers are subject to a progressive discipline policy, the purpose of which is to encourage them to correct their behavior and avoid more serious discipline. Ivey Dec. ¶ 3.  JSO considers discipline to be a Level 1 Written Reprimand ("WR") or above (i.e., a Level 2 WR, demotion, suspension or termination).  Ivey Dep. 105:24-106:10; Pl. Dep. 50:16-22.  At that level, the discipline has to be reviewed by the Undersheriff, JSO's second in command, who is authorized to reduce the discipline or to determine that no discipline is warranted.  Ivey Dep 4:17-22; 7:17-18; 27:6-28:20; 29:18-30:21; 48:25-50:16; 51:23-52:6; 79:4-83:10; 123:11-17, Ex. 1 and 5. All of JSO's officers are subject to corrective discipline,

---

[4]A complaint against an officer may originate externally (e.g., a citizen or the media) or internally as an in-house complaint from another officer, a civilian employee, or a staff person (i.e., Assistant Chief, Chief, or Director).  Ivey Dep. 33:14-35:5; 51:23-52:17; 71:21-73:12; 117:12-118:18   The current Undersheriff, Patrick Ivey, receives multiple complaints against officers, all of which JSO investigates, and he reviews a number of disciplinary cases. *Id.*  An officer's disciplinary history is listed in a document called a "Concise Officer History."  Ivey Dec. ¶ 3.

regardless of their rank or sex.  *Id.* at 10:7-11:4; 150:16-152:5; 153:15-154:19.  Internal Affairs ("IA") is responsible for investigating serious, non-criminal policy violations which may lead to discipline.  *Id.* at 28:21-24; Pl. Dep. 67:7-14; 78:13-24. Another tool JSO uses to correctively direct its officers and help them make continuous improvement is formal and informal counseling, which JSO does not consider to be "discipline." Ivey Dep. 10:7-11:4; 104:11-20; 107:18-108:16; Lendvay Dec. ¶ 8; Pl. Dep. 46:17-24; 50:16-22; 68:24-69:16; 87:9-21.  Unlike formal (written) counseling, informal counseling can be as simple as a supervisor verbally telling an officer, "please don't do that again." Ivey Dep. 107:13-108:16; Pl. Dep. 46:17-21.

### 1.        **Plaintiff Was Investigated or Counseled, But Received No Discipline**

Most of the so-called "discipline" Plaintiff complains about post-August 2011 was merely informal or formal counseling to help her improve as an officer.  Compl. ¶¶ 7-12; 21-23. Plaintiff conceded that, in order to maintain order and consistency, JSO is required to enforce its orders, policies and procedures.   Pl. Dep. 66:2-67:1. She testified that counseling is not discipline, JSO does not have to counsel an officer before issuing discipline, and at times a supervisor is required to counsel an officer or refer the matter to IA.  *Id.* at 49:13-50:2; 78:13-24; 142:7-14.[5] As a lieutenant, Plaintiff has counseled officers, disciplined a subordinate, and referred another to JSO's Integrity Unit ("Integrity").[6]  *Id.* at 44:3-51:23; 67:15-23; 68:2-18; 78:13-24.   Similar to the actions Plaintiff's supervisors took when counseling her, she has assigned subordinates policies to read.  *Id.* at 44:3-45:4; 328:2-331:9.

---

[5]Plaintiff claims JSO uses counseling as grounds for progressive discipline or demotion, but JSO has never demoted her. Pl. Dep. 94:2-95:5;104:19-105:4; 141:15-142:6. 206:8-207:2.

[6]Integrity investigates criminal and public corruption allegations and assists other units with special expertise and investigative tools, such as video surveillance and GPS (Global Positioning System) trackers. Ivey Dep. 28:25-29:17; 120:5-122:23; 148:22-149:20, Ex. 7; Pl. Dep. 67:24-68:1.

Plaintiff complains that Chief Jean Tranquille "disciplined" her for speaking to him in a disrespectful way during an October 2011 meeting. Compl. ¶¶ 7-8. However, Plaintiff admitted at her deposition that Tranquille did not refer her to IA and only gave her informal counseling for failing to show courtesy. Pl. Dep. 87:3-88:9; 91:18-92:20, Ex. 1 and 4. She acknowledged that Tranquille did not counsel her in front of others, the incident was not listed in her Concise Officer History and, as her supervisor's boss, he had the right to counsel her. *Id.* Plaintiff conceded that she is brash and outspoken, she does not hold back from freely giving her opinion, and, on this occasion, she "fired back" at Tranquille. *Id.* at 88:10-91:17; 269:5-270:9. Plaintiff alleged that she is treated differently because she is an "outspoken female," but acknowledged that so-called outspoken and brash male officers have been counseled, disciplined and demoted. *Id.* at 148:17-151:13. Plaintiff asserts that Lt. Brett Sharp (male) also spoke to Chief Tranquille inappropriately, but rather than being disciplined, Tranquille only "told him to calm down and that they could talk." Compl. ¶ 8; Pl. Dep. 92:21-94:7, Ex. 1 and 4. Plaintiff, who was not present during this meeting, conceded that Tranquille's admonition to Sharp to "calm down" was, in fact, counseling. *Id.* Ronald Lendvay, who was Plaintiff's supervisor at the time and witnessed both incidents, stated that there was a marked difference between the way Sharp spoke to Tranquille and the disrespectful manner in which Plaintiff continued arguing with Tranquille in front of everyone at the meeting -- superiors and subordinates alike. Lendvay Dec. ¶¶ 4-5.

Plaintiff admitted that in October 2011, Lendvay formally counseled her for five incidents (not three incidents as alleged in the Complaint), he had the right to counsel her on those issues, and the counseling did not appear on her Concise Officer History. Compl. ¶¶ 9-11; Pl. Dep. 95:3-103:18; 104:19-105:19, Ex. 1 and 4. Plaintiff was a probationary lieutenant and had five infractions within 10 days, which Lendvay considered evidence of a rapid decline in

performance that needed to be corrected.  Lendvay Dec. ¶¶ 6-10.  Therefore, Lendvay had no choice but to formally counsel her, but he remained professional and never threatened her or yelled or cursed at her.  *Id.* at ¶ 8; Pl. Dep. 104:19-106:9.  The counseling also did not affect Plaintiff's pay.  *Id.*  Before formally counseling Plaintiff, Lendvay had several discussions with her or emailed her about the same issues.  *Id.* at 101:18-102:10.  Plaintiff admitted that Lendvay sent emails to male lieutenants regarding the same infractions.  *Id.* at 97:23-100:1; 103:19-104:1, Ex. 6 and 7; Lendvay Dec. ¶¶ 12-13.  Lendvay also verbally counseled male lieutenants.  *Id.*

Lendvay, as well as Assistant Chief ("A/C") Bobby Deal, Plaintiff's next supervisor, repeatedly counseled Plaintiff about making curfew enforcement a priority, which was a strategy former Sheriff John Rutherford ordered to help reduce juvenile crime.  Pl. Dep. 82:18-83:9; 101:18-102:4; 108:3- 109:6, Ex. 5 and 6; Lendvay Dec. ¶¶ 6, 10-11. Lendvay and Deal told Plaintiff that there was no quota.  Pl. Dep. 82:18-87:2, Ex. 5 and 6.  Lendvay also emailed male lieutenants about curfews.  *Id.*  Before counseling her, Lendvay requested that Plaintiff focus more on curfews, but he did not discipline her or refer this issue, or any other issue, to IA.  *Id.* at 102:5-10; 103:3-18, Ex. 38 (p. 37); Lendvay Dec. ¶¶ 8-9.  Plaintiff openly expressed her disagreement on the curfew issue and claimed that JSO was illegally enforcing curfews.  Pl. Dep. 108:3-112:14, Ex. 8; Lendvay Dec. ¶ 11. Even after former Undersheriff Sheriff notified Plaintiff that Vanessa Moore, JSO's legal advisor, found no illegality, Plaintiff created a non-approved presentation to train her officers on how she believed curfews should be enforced.  *Id.* at 103:3-112:14, Ex. 8. Plaintiff asserts that in September 2013, A/C William "Buck" Johnson, her supervisor at the time, reprimanded her for a comment she made at a community meeting. Compl. ¶¶ 21-23; Pl. Dep. 142:15-25, 336:19-23, Ex. 4.  However, Johnson only supervised Plaintiff for 15 months.  Ivey Dec. ¶ 3, Ex. "A".   Again, Plaintiff only received informal

6

counseling, A/C Johnson did not refer the incident to IA and it does not appear on her Concise Officer History.  Pl. Dep. 143:1-144:15; Ivey Dec. ¶ 3, Ex. "A".  In late May or early June 2013, Plaintiff allegedly "confronted" Johnson regarding his treatment toward women, including a "motor-boating" incident she did not witness. Compl. ¶¶ 28-31; Pl. Dep. 151:23-157:23. Plaintiff did not receive any counseling or discipline after she purportedly confronted A/C Johnson.  *Id.*  Plaintiff claims that Johnson "berated her and cursed at her" on the phone for deploying reserve officers, but he did not yell or curse at male lieutenants for the same offense. Compl. ¶¶ 32-33.  As shown by Plaintiff's response to Johnson on another matter, however, she responded to Johnson in a similar, unprofessional manner.   Pl. Dep. 155:16-156:19; 262:16-263:12, Ex. 25.  Plaintiff also testified that she did not have a problem with Johnson's conduct because "that was kind of [their] relationship."  *Id.*

Over the course of her career at JSO, Plaintiff has been charged with or received counseling or discipline on multiple occasions for rude or unprofessional comments to supervisors, subordinates, other City employees and members of the public.  *Id.* at 75:17-77:3; 248:18-253:20; 288:7-19.  On September 24, 2013, Plaintiff received formal counseling from Johnson for improper communications over the police radio, which she conceded was factually correct.  *Id.* at 261:2-262:12, Ex. 24.  On another occasion, at the direction of Chief Michelle Cook, Plaintiff's female second-line supervisor, Lt. Andrew Ayoub (Plaintiff's direct supervisor) had to informally counsel Plaintiff for complaining about JSO's new computer equipment.  *Id.* at 295:12-296:25, Ex. 2 (p. 16, ¶ XXI).[7]

---

[7] Plaintiff's gender was not a factor in her supervisors' decisions.  Senterfitt Dec. ¶ 8; Lendvay Dec. ¶¶ 12-13; Brown Dec. ¶¶ 9-12.

Plaintiff has acknowledged the importance of JSO investigating complaints. Pl. Dep. 67:2-6. Nevertheless, even in cases where she was exonerated and received no discipline or counseling, she complains that JSO investigated her as required by its policies. Compl. ¶¶ 12-20.[8] Plaintiff alleges that Chief Adam Brown filed a complaint against her and a male officer for failing to write a general offense report and summon a detective to the scene of a shooting. *Id.*; Pl. Dep. 112:15-119:23, Ex. 2 (p. 11, ¶ XII) and 4. Plaintiff claims Brown should have spoken to her before filing the complaint and, based on information she heard second hand, asserts the only reason he referred the incident to IA was because she was involved. *Id.* However, Plaintiff admitted that Brown was not wrong to refer the matter to IA, he had no duty to discuss the matter with her first and, unlike the male officer, she received no counseling or discipline. *Id.* at 116:2-119:23; 135:6-18; Brown Dec. ¶¶ 3-5. Moreover, Brown had a duty to refer serious allegations to IA for investigation, as he has done many times in cases involving both male and female officers, and Florida's Law Enforcement Officers' Bill of Rights prohibits questioning an officer facing potential discipline. *Id.*; Ivey Dep. 57:14-58:3; Pl. Dep. 77:5-81:1.

Plaintiff also alleges that in June 2014 Brown filed a complaint against her for an improper vehicle pursuit and forwarded it to JSO's Safety Review Board ("Safety Board"), which referred it to IA. Compl. ¶¶ 17-20. However, Brown did not file a complaint against Plaintiff and the referral to IA was the entire Safety Board's decision, not just his decision. Brown Dec. ¶¶ 7-11, Ex. A. Moreover, Brown did not determine that the pursuit violated JSO's policy, which was why he referred the case to the Safety Board to determine whether the pursuit

---

[8]Plaintiff complains about incidents that occurred over almost her entire 22-year career, including under the two prior Sheriffs, but she admits JSO took remedial action to investigate/address her pre-2011 complaints, Pl. Dep. 72:6-75:16; 146:8-148:24 238:19-241:1; 297:1-298:23; 328:2-331:9; 344:11-347:23, Ex. 2 (p. 6, ¶ IV); Ivey Dec. ¶ 3, Ex. "A".

was outside JSO's policy.  *Id.*  Brown also referred the male officers involved in the pursuit to the Safety Board.  *Id.*  Plaintiff conceded that she did not receive any discipline or counseling as a result of the referral and JSO has referred male officers to the Safety Board.  Pl. Dep. 135:19-138:22; 322:9-325:21.  In June 2014, an allegation arose that Plaintiff was having sex on duty, but she was exonerated of the charge.  *Id.* at 322:9-325:21; 336:16-339:3; 343:14-20.[9]  Plaintiff's subordinate, Officer Fortuno, also filed a complaint against her, which former Undersheriff Dwain Senterfitt reduced from a Level 1 WR to a formal counseling.  *Id.* at 248:18-252:21.

In May 2016, after receiving additional complaints about Plaintiff, JSO placed a GPS tracker on her take home police vehicle.  *Id.* at 195:11-196:25; 203:1-4, Ex. 4.  Undersheriff Ivey referred the initial complaint to IA, but Integrity conducted the surveillance.  Ivey Dep. 108:23-131:20, Ex. 6 and 7.  JSO has investigated male officers for similar offenses (i.e., failing to report to or excessively leaving their assigned work location).  *Id.*  The Undersheriff received complaints that Plaintiff made an inappropriate "your momma" joke to a subordinate and that she was holding inappropriately long checkoffs[10] and frequently outside of her assigned zone.  *Id.* Plaintiff admitted that she made the joke and acknowledged that, in most circumstances, the entire squad should not be hanging out during checkoff when they could still be handling police calls. Pl. Dep. 202:1-25; Ivey Dep. 126:10-127:14, Ex. 7. Integrity, not the Undersheriff, suggested a GPS tracker as the appropriate investigative tool, which the Undersheriff approved. *Id.* at 125:10-126:9; 148:22-149:20, Ex. 7.  Plaintiff conceded that JSO has placed GPS trackers on the take home vehicles of male officers and that she suffered no real harm from the tracker.

---

[9]Plaintiff asserts the sex-on-duty charge occurred right after she threatened to file "a complaint on chiefs for harassment" (Pl. Dep. 322:9-325:21; 343:14-344:5), but she filed the complaint on September 26, 2013, nine months before she was charged with that offense.  *Id.* at 56:19-57:17, Ex. 1; Comp. ¶ 24.

[10]In contrast to "roll call" at the start of the shift, "checkoff" takes place at the end of the shift and is usually handled by sergeants who exchange information with patrol officers and collect paperwork from them.  Pl. Dep. 201:19-25; Ivey Dep. 111:1-110:1.

Pl. Dep. 197:1-201:18; 292:8-11. Although Plaintiff received no counseling or discipline as a result of the investigation and taxpayers pay for her police vehicle and the gas, she alleges that the GPS tracker "grossly" violated her privacy.  *Id.* at 200:4-201:7; 203:1-205:14; Comp. ¶ 60; Ivey Dep. 143:20-144:6.

Plaintiff claims that in April 2015, Director Tom Hackney embarrassed her by asking her to step out of a combined roll call with the Sheriff and informally counseling her about playing games on her cell phone during the meeting.  Compl. ¶¶ 49-51; Pl. Dep. 70:12-71:2; 182:13-185:21.  By Plaintiff's own admission, Hackney did not counsel her in front of anyone else, he did not formally counsel or discipline her, and he did not refer the matter to IA.  *Id.*  Plaintiff also has no evidence that Hackney knew about her EEOC charge. *Id.*  Plaintiff claims that A/C Ayoub confronted Director Hackney and told him he was wrong, but she admitted that she did not hear their conversation.  *Id.*  In 2016, IA recommended discipline against Plaintiff for seizing lawfully registered guns from a citizen's home after JSO was called out to Baker Act the citizen and for making a derogatory comment about the citizen.  *Id.* at 252:22:-257:25; Ivey Dep. 74:14-106:10, Ex. 5.  JSO has a duty to investigate citizen complaints.  *Id.*[11]  After Undersheriff Ivey learned that, despite a 2013 legal bulletin issued on the subject, some officers were confused as to whether a citizen's guns may be seized in that situation, he reduced Plaintiff's discipline to a formal counseling.  *Id.*

## 2. Since August 2011, Plaintiff Has Received Minimal Discipline

Plaintiff complains about unjustified discipline.  Compl. ¶¶ 7-27, 32-33, 49-51. However, her Concise Officer History shows that since August 2011, she only received

---

[11]Plaintiff's Concise Officer History shows that a number of the complaints filed against her were brought by citizens.  Ivey Dec., ¶ 3, Ex. A.

discipline twice.  Ivey Dec. ¶ 3, Ex. "A".  In October 2012, Plaintiff received a Level 1 WR for missing a mandatory lieutenants meeting on her day off and, on another occasion, for missing roll call (the lieutenant's responsibility) and failing to designate a sergeant or a Person in Charge ("PIC").  Pl. Dep. 119:24-129:24, Ex. 4, 9, 10 and 11; Ivey Dep. 111:1-114:3; Brown Dec. ¶ 6; Plaintiff admitted that it is her duty to designate a PIC, the mandatory lieutenant's meeting was on her day off, and she was not on bereavement leave yet.  Pl. Dep. 54:5-56:18; 119:24-129:24. According to Brown, who was present at the roll call, a sergeant or a PIC had not been designated.  Brown Dec. ¶ 6.  Plaintiff alleged that Lt. Gayle committed the same offense and received no counseling or discipline, but she was not present at this roll call.  Pl. Dep. 128:6-129:5.  The second discipline Plaintiff received was for posting a racially insensitive comment/photograph on Instagram.  Ivey Dep. 27:6-47:6; 68:21-71:20, Ex. 1 and 2; Pl. Dep. 298:24-300:4, Ex. 2 (p. 18, ¶ XXV).  In April 2016, the Undersheriff reduced the recommended discipline against Plaintiff from a 10-day suspension to a 2-day suspension.  *Id.*  JSO has also disciplined male officers for inappropriate comments and charged male officers with similar social media offenses.  Ivey Dep. 47:7-48:24.[12]

    **C.**    **Plaintiff's 2013 Complaint, 2014 Transfer, and 2015 EEOC Charge**

On September 26, 2013, Plaintiff filed an IA complaint against Chief Lendvay, Chief Tranquille, Chief Brown and A/C Deal.  Compl. ¶¶ 24-27; Pl. Dep 56:19-57:17, Ex. 1 and 4. The genesis for the complaint was Plaintiff's belief that they were targeting her for objecting to JSO's curfew policy.  *Id.*  Plaintiff testified that the contentious relationship she had with

---

[12]Plaintiff has no personal knowledge of JSO's alleged harassment of other "outspoken" female officers nor does she know whether or not male officers received discipline.  Pl. Dep. 288:20-289:22; 292:15-295:12; 300:5-320:7; 331:10-333:7, Ex. 2 (pp. 20-26); Ivey Dep. 59:12-62:11. Plaintiff compares her disciplinary record to male officers, but their Concise Officer Histories show that they received comparable and, in some cases, more discipline or counseling than her.  Pl. Dep. 258:5-259:21; 288:20-289:22; 300:5-20, Ex. 23.

Tranquille and Lendvay was primarily due to the curfew issue and she had no problem with Lendvay before that issue arose. *Id.* at 106:10-108:2. Plaintiff is aware of the process to file a complaint and that JSO's policies prohibit discrimination, but she did not want to file anything formal prior to 2013. *Id.* at 72:6-25; 339:9-18, Ex. 12; Ivey Dec. ¶3, Ex. "B". On January 30. 2014, four months later, Plaintiff sent IA an email, claiming that the Assistant Chiefs also harassed her because she is female. Pl. Dep. 339:9-18, Ex. 2 (p. 26) and 12. However, the "illegal practices" of JSO which Plaintiff claims she objected to were unlawful curfews. *Id.*

In 2014, former Undersheriff Senterfitt made the decision to transfer Plaintiff from the midnight shift to the day shift because she was not following her supervisor's instructions and conforming to JSO's standards. Senterfitt Dec. ¶¶ 5-8.[13] The Sheriff has the sole prerogative to transfer officers as necessary for operations. *Id.*; Pl. Dep. 157:24-158:5; 160:14-161:19. Senterfitt received complaints that Plaintiff was spending an excessive amount of time at the stop station (i.e., a safe location for officers while on duty), she was asking officers to stay with her there when they could be out handling service calls, and her supervisors had to repeatedly counsel her on a number of issues. Senterfitt Dec. ¶ 5-8.[14] Senterfitt believed that it was best for the community and JSO to transfer Plaintiff to the day shift where she could receive more training, which she had complained about, and be more closely supervised. *Id.* Plaintiff claims the midnight shift made it easier for her to assist her elderly mother and the 3% shift differential she received allowed her to assist her mother financially. Pl. Dep. 161:20-163:10, Ex. 13. Plaintiff testified, however, that she still had four or five consecutive days off every month and

---

[13]JSO notified Plaintiff of the transfer in June 2014 and it became effective in July 2014. Pl. Dep. 157:24-160:13; 181:24-182:12, Ex. 4. While Plaintiff claims the transfer occurred three weeks after she "confronted" A/C Johnson, she has no evidence he had anything to do with the transfer. *Id.* at; 24-161:19.

[14]Plaintiff admitted baking cookies and engaging in other non-police activities while on duty at the stop station. Pl. Dep. 43:4-44:2; 162:1-5; 266:11-268:18. After business hours during the midnight shift when Assistant Chiefs are off duty, lieutenants are the highest ranking officers on duty. *Id.*; Senterfitt Dec. ¶¶ 6.

A/C Ayoub offered to cover for her if she needed to assist her mother.  *Id.* at 178:24-179:4. The GPS tracker JSO placed on Plaintiff's police vehicle showed that during a two-week period, she only went home once.  *Id.*  Although Plaintiff told the EEOC that the monetary loss from the shift differential was $1,000 to $2,000 a month, she admitted at her deposition that the total loss for the year she was off the midnight shift was only $2,300.  *Id.*  at 160:14-23; 176:13-177:23; 179:5-181:18; 221:8-226:12; 230:7-233:13; 235:3-238:18,  Ex. 13-14, 16-21.  She also conceded that the transfer did not change her job duties and base pay or affect her pension.  *Id.*  Director Michelle Cook (female) told Plaintiff that in six months, she could request a transfer back to the midnight shift.  *Id.* Since August 2011, Plaintiff has not received any mental health treatment. *Id.* at 219:10-15.

On February 5, 2015, Plaintiff filed an EEOC charge.  *Id.* at 181:24-182:12, Ex. 4.  In June 2015, shortly after Mike Williams was elected Sheriff, Ivey and Plaintiff had a brief conversation at the offices of the union, the Fraternal Order of Police ("FOP"), which she claims was intended to "intimidate and publicly embarrass her."  Compl. ¶¶ 52-53; Pl. Dep. 186:14-192:7.  Outgoing Undersheriff Senterfitt had recently briefed Ivey on pending issues and someone notified him that Plaintiff had filed some type of complaint.  Ivey Dep. 14:3-25:11. During Ivey's 15 to 20 second conversation with Plaintiff, he asked her one question -- whether she had filed a complaint -- but he did not announce the question out loud, threaten her, or yell or curse at her.  *Id.*  Plaintiff claims Ivey asked whether she had requested to move to Lt. Gayle's spot, but she received the transfer and did not withdraw her EEOC charge. Pl. Dep. 187:10-188:10; 190:20-191:10.  In fact, she added to the charge.  *Id.*  Plaintiff has also complained about not being chosen for specialized units, such as the SWAT Team.  *Id.* at 28:25-35:19; 259:22-261:1.  Unlike JSO's promotional process based on exams, assignment to a specialized unit is

not a promotion in rank.  Ivey Dec. ¶¶ 4-6.  Since the officers of a unit often have to work closely together under stressful or emergency situations, the Sheriff allows unit supervisors the discretion to select officers to join the unit.  *Id.* at ¶¶ 6-10. Although the selection process is competitive and tryouts, if given, are rigorous, female officers have received assignments to specialized units.  *Id.*  Plaintiff does not know why she or any other female officer was not selected to join a specialized unit.  Pl. Dep. 301:21-320:7; 322:8-16; 331:10-332:17.[15]

## II.   MEMORANDUM OF LAW

### A.   Plaintiff's Cannot Establish a Hostile Work Environment Claim

Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.[16]  To prevail on this claim, the Plaintiff must show:

> (1) [s]he belongs to a protected group; (2) [s]he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275-76 (11th Cir. 2002).   Plaintiff is a member of a protected group, but she cannot prove that she was subject to unwelcome harassment *because she is female*.  To be actionable, the "statements and conduct must be of a sexual or gender-related nature."  *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir.

---

[15]Detective Mechelle Soehlig joined every specialized unit she expressed interest in except the gun unit, but each of the two times she applied another female officer received the assignment. Soehlig Dep. 6:1-10:20; 40:19-44:9. Soehlig has no personal knowledge of any of Plaintiff's claims regarding JSO's treatment of other female officers. *Id.* at 28:10-30:21; 48:3-52:23.

[16]Summary judgment is appropriate if, viewing evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *see also Celotex Corp v. Catrett*, 477 U.S. 317, 322-23, 325 (1986). The "party opposing summary judgment may not rest upon mere allegations or denials in [her] pleadings," but instead must set forth specific facts through affidavits or other evidence showing that there is a genuine issue for trial. *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

14

2000) *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). "Innocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or of the offended party (the plaintiff), are not counted." *Gupta*, 212 F.3d at 583; *see also Agee v. Potter*, 216 Fed.Appx. 837, 840 (11th Cir. 2007) (finding that plaintiff's hostile work environment claim did not arise from conduct based on her gender).

In this case, none of the conduct Plaintiff complains of was based on her gender. Unlike cases where the courts found unlawful harassment, Plaintiff does not assert that her supervisors made gender-based, derogatory comments or used vulgar, gender-specific slurs, epithets or jokes. *Compare Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 811-812 (11th Cir. 2010) (finding abusive working environment where managers and co-workers referred to females with "gender-specific" terms such as "whore" and "bitch") with *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301-1302 (11th Cir. 2007) (finding no harassment where widespread profanity was used toward male and female employees alike, and very little of it was specifically aimed at females). The gravamen of Plaintiff's complaint is simply that JSO's staff persons, acting appropriately in their supervisory capacity, criticized, counseled or disciplined her about her work performance or for not complying with JSO's orders.[17] While Plaintiff may have disliked or disagreed with the corrective action she received, she cannot "buttress a hostile work-environment claim with evidence of unpleasant, but not necessary gender-related conduct." *See Mendoza v. Borden, Inc.*, 195 F.3d 1238,1247-48 (11th Cir. 1999) (citation omitted); *see also Gupta*, 212 F.3d at 583 (where complained of actions are general work matters, a plaintiff cannot, as a matter of law, make out a case for gender harassment).

---

[17]Plaintiff has not filed a discrimination claim based on discrete acts, but a jury may consider relevant discrete acts as part of a hostile work environment claim. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

In *Davis v. Town of Lake Park*, 245 F.3d 1232, 1240-1241 (11th Cir. 2001), the court stated that counseling or criticism of an employee's performance – written or oral – where the employee did not suffer any tangible consequences from it, was not actionable under Title VII. Title VII does not protect an employee from "unwelcome day-to-day critiques and assertedly unjustified negative evaluations," which may "limit an employer's ability to maintain and improve job performance." *Id.* Plaintiff has not presented any evidence that the counseling or discipline she received stemmed from a discriminatory motive, rather than an honest effort to help her improve her job performance, or that it was issued in a derogatory, vulgar or demeaning manner because of her sex. Plaintiff's supervisors counseled male lieutenants on the same or similar issues and male and female officers alike have received discipline. *See Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982) (where "men and women [were] accorded like treatment," harassment was not based on sex). The disciplinary record of some male officers is comparable to Plaintiff's disciplinary record and JSO supervisors (including Plaintiff) have referred male officers to IA, Integrity, and the Safety Board. JSO has also placed a GPS tracker on the take home vehicle of male officers.

In the few cases where Plaintiff received counseling or discipline but male officers did not, there were valid reasons for the difference, such as the number of infractions Plaintiff committed as a probationary lieutenant during a 10-day period or her conduct was more egregious than her male comparators.[18] Unlike male officers, Plaintiff vociferously objected to or failed to comply with her supervisors' directives. *See Butler v. Ala. Dept. of Transp.*, 536

---

[18]Since Plaintiff's claims of harassment against other female officers, as well as her allegation that male officers received more favorable treatment, are based on hearsay, rumor or conjecture, those allegations are insufficient to defeat a motion for summary judgment. *See Adams v. Austal*, 754 F.3d 1240, 1249 (11th Cir. 2014) (in harassment case, the totality of the circumstances does not include other employees' experiences of which the plaintiff is unaware); *see also Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (mere conclusory allegations are insufficient to defeat a motion for summary judgment).

F.3d 1209, 1216 (11th Cir. 2008) ("[e]vidence that one employee follows a rule that another one violates is not evidence of discriminatory enforcement"); *see also Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir. 1984) (accord).  Plaintiff also failed to modify her conduct after being repeatedly counseled on the same or similar issues, such as rude and unprofessional statements and failing to comply with the Sheriff's directive on curfew enforcement.

In other cases, Plaintiff was counseled or disciplined, but the male officer charged with the same infraction was not, or Plaintiff received counseling at the direction of a female, Director Cook, who was also involved in the decision to transfer Plaintiff.  This is further evidence that those decisions were not gender-based. Although Plaintiff disputes the basis for some of the charges/investigations, she admits that her supervisors had the right to counsel her.  In any case, the focus under Title VII is whether her supervisors honestly believed that Plaintiff committed infractions which needed to be investigated.  *See Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).  Plaintiff conceded that JSO has the duty to investigate all complaints against an officer, regardless of whether or not the charges are sustained.  As a number of the complaints against Plaintiff were citizen complaints, she cannot show that her supervisors fabricated those complaints due to gender bias.  Even if Plaintiff's supervisors were mistaken, there is no evidence that her gender was a factor in their decisions.  In sum, Plaintiff has not presented any evidence beyond her subjective, unsupported belief that "but for her sex, she would not have been the object of harassment." *Henson*, 682 F.2d at 904.

Plaintiff also cannot show the fourth element, namely that the "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working

environment." *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).  Courts review the conduct in context, not in isolation, by considering its frequency; its severity; whether it was physically threatening or humiliating; and whether it unreasonably interfered with the employee's work performance.  *Id.*  Title VII is not a "general civility code"; it "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998). To be actionable, the plaintiff must subjectively perceive the environment as hostile and her subjective perception must be objectively reasonable. *Mendoza*, 195 F.3d at 1246; *Harris*, 510 U.S. at 21-22.

Viewing the uncontradicted record in the light most favorable to Plaintiff, the limited number of disciplinary actions and counseling she received since August 2011 and the brief, innocuous remarks of Undersheriff Ivey, Director Hackney and other staff persons, were not severe or pervasive. To be severe, the "conduct must be extreme," therefore "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not actionable. *Faragher v. City of Boca Raton*, 524 U.S. 775, 777-78 (1998).  Title VII does not protect against trivial harms which may be characterized as the "ordinary tribulations of the workplace." *Id.*; *see also White*, 548 U.S. at 68 (actionable harassment does not include "normal petty slights, minor annoyances, and simple lack of good manners"). The remarks Plaintiff complains of do not meet the high standard for severe conduct; instead the comments were, at most, an "offensive utterance." *See Harris*, 510 U.S. at 21 (finding that "epithet which engenders offensive feelings in an employee" is not unlawful harassment).  Although Plaintiff's subjective feelings may have been hurt or she was embarrassed, "Title VII does not serve as a vehicle for vindicating the petty slights suffered by the hypersensitive." *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 530 (M.D. Fla. 1988) (internal citation omitted).  The comments, which occurred on single,

isolated occasions, were not gender-based, physically threatening or personally humiliating to Plaintiff, and the remarks were not delivered in a demeaning or derogatory manner. *See Reeves*, 594 F.3d 798 at 811-812. Instead, the record reflects that Plaintiff's supervisors tactfully counseled or reprimanded her in private rather than in front of her peers. *See Miller*, 277 F.3d at 1277 (finding degrading and humiliating work environment where plaintiff was reprimanded in front of others).

While Plaintiff claims that A/C Johnson yelled and cursed at her, she only cited one incident -- in connection with reserve officers. Since Plaintiff admitted responding to Johnson in a similar, unprofessional manner and testified that Johnson's conduct did not bother her, the record reflects that she did not find his behavior offensive. *See Henson*, 682 F.23 at 903. Plaintiff also cannot prove that Johnson's conduct was motivated by her sex. *See Guthrie v. Waffle House, Inc.*, 460 Fed.Appx. 803, 808 (11th Cir. 2012) (Title VII does not provide protection from someone who is just a "rude and boorish" boss). Moreover, Plaintiff does not allege that any other supervisors spoke to her in a similar manner. Therefore, given that A/C Johnson only supervised Plaintiff for 15 months, the conduct was not frequent. *See Mendoza*, 195 F.3d at 1248 (affirming summary judgment because the frequency of the harassing conduct was "for the most part lacking"); *see also Barrow v. Georgia Pacific Corp.*, 144 Fed.Appx. 54, 58 (11th Cir. 2005 (finding that a few, isolated or sporadic comments occurring randomly throughout 14-year employment were not severe or pervasive). Additionally, even accepting as true Plaintiff's contention that JSO did not have valid grounds for the counseling/discipline she received, since August 2011 she has only received counseling and discipline a few times. Plaintiff admitted that she suffered no tangible harm from the GPS tracker and other investigations JSO was required to conduct per its policies. Therefore, when viewed objectively

in the context of a law enforcement agency where almost every officer receives corrective feedback, counseling or discipline at one time or another, the counseling and discipline was not severe or pervasive.  *See Faragher*, 524 U.S. at 777-78.  It certainly does not does not meet the legal standard for actionable harassment, to wit "extensive, long lasting, unredressed, and uninhibited sexual threats or [other harassing] conduct that permeated the plaintiffs' work environment."  *Gupta*, 212 F.3d at 586 (citation omitted).  Courts have found insufficient as a matter of law more serious and frequent conduct than Plaintiff alleges in this case.  *See Mendoza*, 195 F.3d at 1246-48 (citing examples of offensive conduct that circuit courts found was not severe or pervasive),

Plaintiff must also show that she "subjectively perceived the [work] environment to be abusive."  *Harris*, 510 U.S. at 21-22.  In the absence of such evidence, the alleged harassment "has not actually altered the conditions of the victim's employment, and there is no Title VII violation."  *Id.*; *see also Mendoza*, 195 F.3d at 1249 (finding nothing in the record which shows the alleged harassment impaired plaintiff's job performance); *see also Guthrie*, 460 Fed.Appx. at 808 (finding alleged harassment did not actually "prevent [plaintiff] from performing her job duties").  Plaintiff was promoted twice during her career, she was never demoted or denied a step pay increase, and she earns almost $110,000 a year.  She generally received at least satisfactory performance reviews and the only pay loss she suffered over her 22-year career is a *de minimus* amount of $2,300 due to the transfer.  Since August 2011, she has suffered no tangible or economic consequences from being charged/investigated and the counseling she received.  Nor has Plaintiff sought mental health treatment for the alleged harassment.  *See Harris*, 510 U.S. at 23 (psychological effect on plaintiff's well-being is relevant as to whether she actually found the work environment abusive). Therefore, the alleged harassment did not unreasonably impair

Plaintiff's ability to perform her job. Lastly, since Plaintiff cannot prove the second, third and fourth elements of a hostile work environment claim, she cannot establish the fifth element, namely a basis to hold Defendant liable. *See Henson*, 682 F.2d at 905.   Therefore, the City is entitled to judgment as a matter of law on Plaintiff's hostile work environment claim.

### B.       Plaintiff Cannot Establish a Retaliatory Hostile Work Environment Claim

In *Gowski v. Peake*, 682 F.3d 1299, 1311-13 (11th Cir. 2012), the Eleventh Circuit joined its sister circuits in recognizing a retaliatory hostile work environment claim.  To prevail on this claim, Plaintiff must satisfy the same evidentiary requirements as a discriminatory hostile work environment claim, including showing that the alleged harassment was objectively and subjectively severe or pervasive.  *Id.*   Additionally, she must demonstrate that retaliatory intent was the "but-for" cause of the alleged harassment.  *Id.*; *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533.

Plaintiff's claim of retaliatory hostile work environment fails for all of the same reasons her hostile work environment claim fails.  *See* Section II(A), above.  This case can be distinguished from *Gowski*, 682 F.3d at 1311-1313, where the court found that defendants engaged in a "targeted campaign to force [the physician-plaintiffs] to resign" that was both severe and pervasive by limiting their access to hospitals and other privileges, damaging their reputations by spreading rumors about them, and disciplining them.  As the retaliatory acts followed plaintiffs' complaints, the court found that defendants "intended to retaliate against [plaintiffs] because of their EEO activity." *Id.*  Here, the record is devoid of any evidence that JSO engaged in a "targeted campaign" against Plaintiff that was severe or pervasive. Instead, the

record shows that since September 2013 when Plaintiff filed a formal complaint, her supervisors only counseled her on a few occasions.   As evidenced by Plaintiff's history of repeated misconduct on the same issues despite her supervisors' efforts to correct her, JSO had valid grounds for those actions. Furthermore, since September 2013, the former or current Undersheriff nullified or reduced most of the recommended discipline against Plaintiff. Additionally, Plaintiff cannot show that she suffered any injury from the brief, harmless remarks Undersheriff Ivey and other staff persons made to her after she filed an EEOC charge in February 2015.  Thus, Plaintiff cannot demonstrate that retaliatory intent was the "but-for" cause of JSO's actions and Defendant is entitled to summary judgment on her retaliatory hostile work environment claim.  *See Nassar*, 133 S. Ct. at 2528.

### C.   Plaintiff's Cannot Prove Her Retaliation Claim

To establish a *prima facie* case of retaliation, "a plaintiff must prove that she engaged in statutorily protected activity, she suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).[19]   Plaintiff is claiming protected activity under both the "participation" and "opposition" clauses of Title VII.  *See E.E.O.C. v. Total System Services, Inc.,* 221 F.3d 1171, 1174 (11th Cir. 2000); *see also Branscomb v. Sec'y of Navy*, 461 Fed.Appx. 901, 906 (11th Cir. 2012).   The "opposition clause" requires plaintiff to show that she opposed "an unfair employment practice that is at least facially actionable under Title VII." *Id.*  Although a plaintiff need not show that her employer's actions were actually unlawful, she must show that she had an objectively reasonable, good faith belief that discrimination existed.  *Howard v. Walgreen Co.*,

---

[19]Title VII retaliation claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, non-retaliatory reason for its actions.  *Id.*  If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate the employer's explanation is merely a pretext for retaliation.  *Id.*

605 F.3d 1239, 1244 (11th Cir. 2010).   In this case, the principal "illegal activities" Plaintiff complained of and, by her own admission, the primary reason for the contentious relationship she had with her supervisors, was that JSO was unlawfully enforcing curfews, not gender discrimination.   *See* Section II(A), *supra*.   Therefore, she cannot show she had a good faith, objectively reasonable belief that discrimination existed.

Plaintiff also cannot demonstrate that she suffered a "materially adverse" action which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68.   The employee's subjective view of the action is "not controlling…[it] must be materially adverse as viewed by a reasonable person in the circumstances." *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448-49 (11th Cir. 1998). Moreover, an action "is not adverse merely because the employee dislikes it or disagrees with it."   *Id.*   Although a transfer to a different position can be adverse if it reduces an employee's pay, prestige or responsibility, it is not adverse if it only "imposes some *de minimus* inconvenience or alteration of responsibilities." *Id.* at 1543.   While Plaintiff may not have liked the transfer, that does not mean she suffered a *serious and material* change in the terms or conditions of her employment.   *Davis,* 245 F.3d at 1239.   The transfer was only to a different shift, which JSO had the right to change, not a change in position or responsibilities.   Except for the *de minimus* loss of $2,300, which did not affect Plaintiff's pension, her job duties and base pay remained the same.   Likewise, the few instances where supervisors properly referred Plaintiff to IA or other JSO units for investigation, where she was exonerated or received no discipline or counseling, were not materially adverse.[20]

---

[20]*See Rademakers v. Scott*, 350 Fed.Appx. 408, 413 (11th Cir. 2009) (investigation of former sheriff's office detective for misconduct not materially adverse); *see also Burgos-Stefanelli v. Sec'y, U.S. Dept. of Homeland Sec.*, 2010 WL 785802, *9 (S.D. Fla. 2010) (proposed 14 day suspension for plaintiff's alleged AWOL status was not materially adverse as a matter of law because defendant never implemented the proposed disciplinary action).

Plaintiff also cannot prove causation "by showing close temporal proximity between the statutorily protected activity" and the allegedly adverse action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).  In the Eleventh Circuit, even a three-to-four month gap between the protected conduct and adverse action is insufficient to establish causation.  *Id.*  If temporary proximity is lacking, a plaintiff may prove causation by showing that "the decision-makers were aware of the protected conduct" when they took adverse action "and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. BellSouth Telecomm.*, Inc., 292 F.3d 712, 716 (11th Cir. 2002).  When the decision to take adverse action against the employee was already made or in the process of being made before the employee filed a complaint, the plaintiff's retaliation claim fails as a matter of law.  *See Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006).[21]  In this case, none of the counseling/discipline Plaintiff received prior to September 2013 is sufficient to show causation because JSO took those actions <u>before</u> she filed a complaint against the Chiefs and A/C Deal and 1½ years before she filed an EEOC charge.  Similarly, there was more than a three or four month gap between Plaintiff's complaint against the Chiefs and A/C Deal in September 2013 and her transfer in 2014.  In addition, a year and two months elapsed between the filing of Plaintiff's EEOC charge in February 2015 and the only discipline she received thereafter, namely the two-day suspension she received in April 2016.

As stated above, JSO had legitimate, non-retaliatory reason for its actions.  *Chapman v. AI Trans.*, 229 F.3d 1012, 1030 (11th Cir. 2000).  Instead of rebutting those reasons head on by

---

[21]*See also Manley v. DeKalb Cty.*, Ga., 587 Fed.Appx. 507, 513 (11th Cir. 2014) (no causal connection where write-up occurred before employee filed an internal complaint and EEOC charge); *see also Slater v. Energy Servs. Group Intern, Inc.*, 441 Fed.Appx. 637, 642 (11th Cir. 2011) (finding no causal link because supervisory had already contemplated plaintiff's termination when she sent an email complaining of discrimination).

showing pretext (i.e., the reasons were both false and the true motive was to retaliate), Plaintiff "quarrels" with JSO's reasons and asks the Court to second-guess the wisdom of her employer's decisions and "substitute [its] business judgment" for that of her employer. *Id.* However, the focus is on the decision-maker's perception of the facts available to him at the time of the decision and whether he honestly believed those facts. *Id.* Even if Plaintiff's supervisors were mistaken, an employer may make a decision for any reason, including one "based on erroneous facts," provided it is not for a retaliatory reason. *See Nix*, 738 F.2d at 1187. As Plaintiff cannot prove that JSO's reasons were pretextual and that retaliatory intent was the "but-for" cause for its actions, summary judgment is due to be granted on Plaintiff's retaliation claim.

## <u>CONCLUSION</u>

The undisputed facts in this case show that Defendant did not unlawfully harass or retaliate against Plaintiff.  Accordingly, there are no triable issues upon which a jury could reasonably find for the Plaintiff.

For the foregoing reasons, Defendant, the City of Jacksonville, respectfully requests that this Court enter an order granting it summary judgment on each of Plaintiff's claims.

Dated:  October 3, 2018

**OFFICE OF GENERAL COUNSEL**

/s/ *Wendy Byndloss*
**WENDY E. BYNDLOSS**
**ASSISTANT GENERAL COUNSEL**
Florida Bar No. 0048718
Email:  WByndloss@coj.net
**SEAN B. GRANAT**
**DEPUTY GENERAL COUNSEL**
Florida Bar No. 0138411
Email: SGranat@coj.net
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
(904) 630-1700 - Telephone
(904) 630-1316 – Facsimile
*Attorneys for Defendant, City of Jacksonville*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of October, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a copy of the foregoing to Plaintiff's counsel, Sheppard, White, Kachergus & DeMaggio, P.A., at sheplaw@att.net.


/s/ Wendy Byndloss
Assistant General Counsel

26