UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TRUDY CALLAHAN,

    Plaintiff,

vs.                                             Case No.: 3:16-cv-1348-J-20JBT

CITY OF JACKSONVILLE, FLORIDA,

    Defendant.

_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, CITY OF JACKSONVILLE, FLORIDA (the "City"), by and through the undersigned counsel, files this Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 40). Defendant is entitled to summary judgment because Plaintiff cannot prove the essential elements of her claims, on which she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Plaintiff's reliance on time-barred incidents, inadmissible evidence, other employees' experiences, conduct she only became aware of after this lawsuit commenced, and a mischaracterization of facts in contradiction of her sworn testimony is insufficient to defeat summary judgment  *Id.*

**A.     Plaintiff's Hostile Work Environment and Retaliatory Hostile Work Environment Claims Fail as a Matter of Law**

    **1.     Time-Barred Incidents**

Plaintiff has presented insufficient evidence that the post-2011 conduct she complained of was severe or pervasive <u>and</u> based on her gender or retaliatory. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275-76 (11th Cir. 2002); *see also Gowski v. Peake*, 682 F.3d 1299, 1311-

13 (11th Cir. 2012). Therefore, she seeks to prove her claims by presenting time-barred and other inadmissible evidence. Doc. 40, at pp. 4-8, 15-16. A hostile work environment claim is comprised of a series of separate acts that constitute one "unlawful employment practice," therefore as long as one act contributing to the claim falls within the filing period, the entire time period may be considered in determining the employer's liability. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). However, a plaintiff cannot recover for acts that occurred before the filing period if the employer took "intervening action." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258-59 (11th Cir. 2003).[1] Based on *Morgan* and the Court's Order that Plaintiff's claims may include incidents that began in August 2011 (Doc. 15), the following incidents are insufficient to satisfy Plaintiff's burden of proof because the acts are untimely, JSO took intervening action, or the acts were not gender-based, actionable harassment:

- 1998, JSO officers allegedly broke into Plaintiff's home – untimely, inadmissible hearsay statements of officers, led to no discipline or counseling, and was not severe or pervasive conduct. Doc 31-2, at 347:19-23.

- 1998, inappropriate comments by Plaintiff's male supervisor and he asked her to dinner – untimely, not severe or pervasive, JSO took intervening action by investigating her complaint and transferring her from under the male officer's supervision. Doc. 31-1, at 73:25-74:23.

- 2006, a fellow sergeant and other officers sung lyrics about Plaintiff being a "whore" -- untimely and, as Plaintiff testified (*Id.* at 72:13-73:24), JSO took intervening action:

> So I went to Huck Ross and I said, "Listen, I didn't want to make a formal complaint, not really. It is what is. But it's inappropriate, so it needs to stop. And he did. He – it stopped, and honestly that sergeant and me are fine now.

---

[1]Defendant is also not liable for conduct Plaintiff failed to report or bring to her supervisors' attention. *See Patsalides v. City of Fort Pierce*, 724 Fed.Appx. 749, 751-752 (11th Cir. 2018) (city was not liable where it took prompt remedial action after plaintiff reported the male officer's offensive conduct).

2

- 2008-2009 domestic dispute – untimely and not severe or pervasive conduct. Doc. 31-3, Ex. 2 (VI, at p. 8).

- 2010, Plaintiff was denied comp, time to attend a bomb class, but male Undersheriff Frank Mackesy ultimately granted it – untimely, JSO took intervening action, and not severe or pervasive conduct. Doc. 31-2, at 297:1-298:23.

- Three incidents prior to 2011 when Chief Tranquille allegedly treated her differently than male officers – untimely and not severe or pervasive conduct.

- All other allegations which occurred prior to 2011 -- untimely, JSO took intervening action, not severe or pervasive conduct, and the incidents were not the impetus for Plaintiff's current complaint and decision to retire so the conduct is not part of the same hostile work environment claim. *Id.* at 238:20-241:5; 297:1-298:23.

Conversely, there is no genuine issue of material fact as to whether the post-2011 conduct Plaintiff complains of, namely the few times she was actually disciplined[2], the isolated, innocuous statements of her supervisors, and her transfer for legitimate reasons, was objectively severe or pervasive conduct. *See Farragher v. City of Boca Raton*, 524 U.S. 775, 777-78 (1998).

    2.    **Inadmissible Evidence, Other Employees' Experiences, and Conduct Plaintiff Was Not Aware Until This Lawsuit Was Filed**

In considering whether the conduct rises to the level of actionable harassment, a court must determine whether, based on the totality of the circumstances, the plaintiff's workplace was subjectively and objectively hostile. In *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1250

---

[2] Plaintiff cites cases of actionable harassment where the plaintiffs were subjected to "unwarranted or disparate discipline" (Doc. 40, at p. 14). However, the plaintiffs in those cases not only alleged disparate discipline, but they also presented sufficient evidence of pervasive, egregious or physically humiliating conduct or explicit race or gender-based comments directed at them or occurring in their presence that is absent in this case. *See Vance v. Southern Bell Tel. and Tel Co.*, 863 F.2d 1503 (11th Cir. 1989); *see also Shockley v. HealthSouth Central Ga. Rehab. Hosp.*, 293 Fed.Appx. 742 (11th Cir. 2008); *Oden v. Southern Railway Co., et al.*, 1984 WL 48881, *3 (N.D. Ga. 1984).

(11th Cir. 2014) (emphasis added), the Eleventh Circuit stated:

> The totality of a plaintiff's workplace circumstances does not include other employees' experiences *of which the plaintiff is unaware*. Courts conduct the objective assessment from the perspective of a reasonable person in the plaintiff's position, *knowing what the plaintiff knew*. . .[not] what the plaintiff learned only after her employment ended or what discovery later revealed.

*See also Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995). Here, Plaintiff has failed to cite a single, post-2011 incident where JSO supervisors made gender-based comments, slurs or epithets to her personally or treated her in a physically humiliating or threatening manner based on her gender. Nor has she produced admissible evidence regarding such comments or conduct toward other female employees and the incidents Plaintiff cites (Doc. 40, at pp. 4-12) do not satisfy the stringent test for severity or pervasiveness:

- Assistant Chief ("A/C") Johnson allegedly screamed at his secretary to bring him coffee – one incident and no evidence that conduct was gender-based.[3]  Doc. 31-1, at 153:11-154:6.

- Johnson allegedly placed his face in a female officer's breasts – Plaintiff has no personal knowledge and based on inadmissible hearsay. *Id.* at 151:23-153:10.

- Undersheriff Pat Ivey allegedly referred to another female officer as "Juicy" – Plaintiff has no personal knowledge and based on inadmissible hearsay. Plaintiff testified (Doc. 31-2, at 292:15-293:12):

> Q: When did Pat Ivey call an officer "Juicy"?
> A: I guess when she was in – under him.
> Q: Did you hear Pat Ivey call her "Juicy"?
> A: No, sir.

- In 2016, Plaintiff was called a whore -- a female civilian JSO employee, and not any of Plaintiff male supervisors, allegedly used the word, therefore the conduct was not gender-based.

---

[3] While Title VII prohibits harassment based on a protected category such as sex, "it does not prohibit harassment alone, however severe or pervasive." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301-1302 (11th Cir. 2007); *see also Succar v. Dade Cnty. Sch. Bd.,* 229 F.3d 1343, 1345 (11th Cir.2000) (Title VII "is not a shield against harsh treatment in the workplace" when it is not based on gender).

*Id.* at 290:6-291:3; 304:4-13. Also, there is no evidence the employee ever called Plaintiff a whore, which was Plaintiff's word based on her interpretation of the word "loose," the word the civilian female employee used. *Id.* at 290:6-291:3; 304:4-13.

- Chief Tranquille allegedly made a "derogatory comment" to Plaintiff but when a male officer shouted at him, he merely told the male officer to calm down. Doc. 31-1, at 92:21-94:7. Plaintiff did not witness this incident nor was she present at any later meetings or discussions Tranquille had with the male officer. *Id.* Plaintiff was told about the incident, but she does not remember who told her. *Id.* Plaintiff also testified:

> Q: So in regards to this verbal altercation with Chief Tranquille that you had, you were not disciplined; you were given a counseling. Is that right?
> A  Correct.

*Id.* at 87:22-88:1. Plaintiff admitted that she "fired back at Chief Tranquille," he had the right to counsel her regarding how she spoke to him, which is exactly what he did, and Tranquille's admonition to the male officer to calm down was counseling. *Id.* at 88:10-92:20.

- Plaintiff did not become aware until discovery in this case that JSO had placed a GPS tracker on her police vehicle in 2014 due to allegations that she was having sex on duty. Doc. 26, at ¶¶ 5-6; Doc. 42-1, at ¶¶ 9, 19. The alleged comments of an Integrity officer that, "we need to get this done because Trudy is going to sue Deal" is irrelevant because Plaintiff never sued Deal nor has she presented any evidence that A/C Deal had personal knowledge of Integrity's investigation. Furthermore, JSO has investigated male officers for sex on duty and has placed a GPS tracker on their take home vehicles for suspected policy violations. Doc. 31-1, at 198:2-8; Doc. 31-2, at 292:8-11; Doc. 31-6, at 118:10-18.

- Other female officers subjected to harassment or discrimination – Plaintiff has no personal knowledge, only hearsay and speculation, and what she describes does not amount to

harassment.   Doc. 31-2, at 301:21-320:7, Doc. 31-3, Ex. 2 (pp. 20-26).  If anything, Plaintiff provides evidence that the following females were selected for and worked in JSO's special units: Tracey Leverett – Academy (Doc. 31-2, at 305:6-8); Gena Heath – bike squad and dive team (*Id.* at 305:9-19); Michele Soehlig – homicide (*Id.* at 315:7-12); and Taime Viner  - Internet Crimes Against Children Unit (*Id.* at 319:7-12).

As the Eleventh Circuit has directed, the Court should not consider inadmissible evidence, other employees' experiences as to which Plaintiff has no personal knowledge, incidents she only became aware through discovery after this action was filed, and misstated facts "in evaluating the objective component of [Plaintiff's] claim of hostile work environment." *Adams*, 754 F.3d at 1250; *see also Smithers v. Wynne*, 319 Fed. Appx. 755, 758 (11th Cir. 2008) (no reasonable person would find the derogatory comments plaintiff complained about, which were not made in his presence, he did not know about at the time and he only heard about through gossip from other employees, were objectively severe).

### 3. Plaintiff's Claim of "Stressful" Internal Affairs Investigations and Disparate Discipline Is Insufficient to Meet Her Burden of Proof

Plaintiff alleges that  the "lengthy" Internal Affairs ("IA") investigations she was subjected to throughout her career were severe or pervasive even though she was fully exonerated of the charges in some cases. Doc. 40, at pp. 3-4, 15-16; Doc. 42-1, at ¶ 6.[4]  Even assuming, *arguendo*, that this characterization is correct, she still cannot show that she was subjected to IA investigations and/or counseling or discipline *because of* her gender or due to

---

[4]Plaintiff argues that *Davis v. Town of Lake Park*, 245 F.3d 1232, 1240-1241 (11th Cir. 2001), which states that counseling without discipline is not an adverse employment action, is irrelevant to a hostile work environment claim.  Doc. 40, at p. 15.  However, *Davis* is applicable because Plaintiff has asserted a retaliation claim.  *See Entrekin v. City of Panama City Fla.*, 376 Fed.Appx 987, 995 (11th Cir. 2010).  Moreover, since the standard for a hostile work environment is severe or pervasive conduct, rather than the arguably lower standard of "materially adverse," courts have found that "heightened criticism and pressure" that does not affect a term or condition of employment does not create a hostile work environment.  *See Crumpton v. St. Vincent's Hosp.*, 963 F. Supp. 1104, 1120 (N.D. Ala. 1997); *see also Edwards*, 49 F.3d at 1521-22.

unlawful retaliation. Nor can she show that JSO did not have legitimate reasons for investigating, counseling or disciplining her. Additionally, she has failed to offer admissible evidence that male officers, who were similarly situated in all relevant respects, were not subjected to stressful IA investigations, which is part of the job.[5] Instead, the undisputed record reflects:

- Plaintiff admitted that male police officers were also subjected to IA investigations. Doc. 42-1, at ¶ 6. Some male police officers have been subjected to just as many, if not more, IA investigations than Plaintiff. Doc. 31-2, 258:5-259:21; Doc. 31-3, Ex. 23.

- Plaintiff witnessed "other officers," not just female officers, suffer from stress due to IA investigations. Doc. 42-1, at ¶ 6.

- Although a referral to IA or counseling is mandatory at times, on several occasions since 2011, Plaintiff's male supervisors only gave her informal or formal counseling instead of referring her to IA, or she received no counseling or discipline at all. Doc. 31-1, at 49:13-50:2; 78:13-24; 87:3-88:9; 91:18-92:20; 95:3-103:18; 104:19-105:19; 142:7-14; Doc. 31-3, Ex. 1, 4.

- Plaintiff's conclusory assertion that she was disciplined more severely than male officers when she was a probationary lieutenant and when she complained about JSO's computers is unsupported. Doc. 40, at p. 16. Plaintiff only received counseling, she has not identified male officers who were not counseled for the same behavior, and her supervisors counseled male officers about the same issues. Doc. 32-1, at 95:6-104:1; Doc. 31-3, Ex. 5, 6 and 7.

- Male officers allegedly did not receive discipline or counseling for similar offenses – Plaintiff has no personal knowledge, based on inadmissible hearsay, and male officers were not

---

[5] See *Coles v. Post Master Gen. United States Postal Servs.*, 711 Fed.Appx. 890, 899 (11th Cir. 2017) (in age and gender harassment case, plaintiff failed to present employees of valid comparators who were "similarly situated [to her] in all relevant respects").

7

similarly-situated in all relevant respects. *Id.* at 258:5-259:21; 288:20-289:22; 300:5-301:20.

- Plaintiff claims that in 2012 A/C Deal gave her an unjustified written reprimand for missing a meeting and not covering roll call. Doc. 31-1, at 119:24-129:5. Plaintiff asserts that a male, Larry Gayle, failed to cover a roll call and was not disciplined, but she has no personal knowledge of this allegation and it is based on inadmissible hearsay. *Id.*

- Plaintiff complains that in 2013, the Safety Board referred a vehicle pursuit she was involved to the Safety Board. However, Plaintiff testified:

> Q: If a supervisor suspects an officer of violating a JSO policy and the supervisor refers the matter to Internal Affairs, is there anything wrong about that?
> A: Absolutely not.

Doc. 32-1, at 80:22-81:1. The vehicle pursuits of other officers have since been referred to IA, and Plaintiff was not counseled or disciplined as a result of the IA referral. *Id.* at 136:18-138:22.

- Plaintiff complains that Chief Adam Brown referred her to IA for not arresting a burglary suspect, but Plaintiff's male co-worker was also investigated and ultimately counseled while Plaintiff was exonerated with no discipline or counseling. Doc. 31-1, at 112:20-119:23.

- Plaintiff complains that Johnson yelled at her about using reserve officers and when she confronted him, but she received no discipline or formal counseling as a result. *Id.* at 157:10-23.

- Plaintiff was investigated for policy violations related to Brandon Fortuno, but she was exonerated of one charge and former Undersheriff Dwain Senterfitt reduced the discipline to a counseling. Doc. 31-2, at 248:18-252:21. Plaintiff was investigated for seizing a citizen's firearms during a Baker Act incident in violation of JSO's policy, but Ivey reduced the recommended discipline to a counseling. *Id.* at 252:22-257:25; Doc. 31-6, at 74:11-95:16, Ex. 5.

8

- Plaintiff compares the discipline she received for a 2016 racially insensitive Instagram posting to Clay Short's allegedly racial statement after a shooting, and asserts that he was not investigated or disciplined, but she has no personal knowledge of this allegation:

    Q: Are you sure enough to state under oath that Sergeant Short hasn't been investigated for that?"
    A: No, Sir.

Doc. 31-2, at 298:24-301:20; Doc. 31-3, Ex. 2 (XXV, p. 18). Moreover, Plaintiff has misrepresented the record with regard to the discipline she received for the Instagram posting. Doc. 40, at p. 10. Rather than the recommended 10-day suspension, Ivey reduced the discipline to a two-day suspension. Doc. 31-2, at 298-24-301:20.

- Plaintiff compares JSO's response to a "K-Y [petroleum] Jelly" comment a male officer made to the discipline she received for her Instagram posting. However, she has no personal knowledge of whether JSO counseled or disciplined the officer, which was handled directly by the Sheriff. Doc. 31-6, at 59:7-63:15; 73:13-74:1. Additionally, unlike the male officer's case, a complaint was made directly to Ivey about Plaintiff's Instagram posting. *Id.* at 65:5-71:20, Ex. 1 and 2. Although Plaintiff claims that JSO has not disciplined male officers for similar offenses (Doc. 40, at pp. 10-11), she has no personal knowledge of this contention. Doc. 31-2, at 289:22; 292:15-295:12; 300:5-320:7; 331:10-333:7; Doc. 31-3, Ex. 2 (pp. 20-26).

Accordingly, the Court should reject Plaintiff's efforts to bolster her harassment claims with workplace investigations and counseling, an "ordinary tribulation of the workplace" in a law enforcement agency. *Farragher*, 524 U.S. at 777-78; *see also Entrekin*, 376 Fed.Appx at 995 (plaintiff suffered no harm from complaint/investigation not sustained). Plaintiff has also failed to present admissible evidence of gender-based disparate discipline. *See Smithers, supra.*

B.  **Plaintiff's Retaliation Claim Fails as A Matter of Law**

1.  **Plaintiff Has Not Suffered an Adverse Employment Action**

Relying on *Gillis v. Georgia Dep't of Corrections*, 400 F.3d 883, 888 (11th Cir. 2005), Plaintiff asserts that the $2,300 she lost due to the transfer was an adverse employment action. Doc. 40, p. 19. However, in *Gillis*, due to a less than stellar review, the plaintiff did not receive a $900 raise to which she would otherwise have been entitled. *Gillis*, 400 F.3d at 888. Here, Plaintiff was not denied a pay raise nor did her base salary change. Doc. 31-1, at 160:21-23. Although Plaintiff describes her shift assignment as "my position on the Midnight Shift" (Doc. 42-1, at ¶ 13), per the Sheriff's prerogative to transfer staff, Plaintiff has been assigned to various shifts during her career and was not *entitled* to remain on the midnight shift. Doc. 31-1, at 24:13-14; 27:11-28:24; 160:21-161:19. Thus, Plaintiff cannot show that the transfer would have dissuaded a reasonable employee in her position from filing a complaint. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).[6]

2.  **Plaintiff Has Failed to Establish Causation**

Since Plaintiff cannot prove causation by demonstrating temporal proximity[7], she seeks to prove causation by showing a "pattern of antagonism" or that the adverse action was the "first opportunity" JSO had to retaliate against her. Doc. 40, at 18-19. Plaintiff asserts that the "pattern of antagonism" begun immediately after she threatened A/C Johnson on July 23, 2013

---

[6]Plaintiff alleges that "numerous other officers" were allowed to transfer for hardship reasons (Doc. 40, at p. 8). but similar to her other unsupported, conclusory claims, she fails to identify similarly-situated male officers.

[7]Plaintiff incorrectly asserts that the gap between her transfer and the conclusion of IA's investigation of her September 2013 complaint was only two months and just five months after she formally complained of sex discrimination. Doc. 40, at p. 9. However, the undisputed record shows that the IA investigation was concluded on March 18, 2014, four months before she transferred and six months after she formally complained of gender discrimination in January 2014, and she was notified of the transfer 9 months after she filed the complaint. Doc. 31-1, 157:24-159:16. Furthermore, the conclusion of an investigation which did not result in discipline is not proof of a pattern of antagonism following protected activity. *See Sapp v. U.S. Attorney Gen.*, 676 Fed.Appx. 878, 882 (11th Cir. 2017).

that she would file a complaint, after which he initiated an Integrity unit investigation on her. *Id.* However, Plaintiff was not absent from the workplace for an extended period of time after she complained to Johnson on July 23, 2013 and she continued under his supervision until July 2014, a year later (*see* Doc. 31-7, ¶ 1, Ex. A; Doc. 42-1, at ¶¶ 8-9), thus the "first opportunity" argument is inapplicable.

In order to demonstrate causation based on a "pattern of antagonism," a plaintiff must show that, at a minimum, the pattern of antagonism *followed* the protected conduct and the decision-makers were *aware* of the plaintiff's protected activity when they took retaliatory action. *See Entrekin*, 376 Fed. Appx. at 996 (emphasis added) (plaintiff must show that her employer *knew* of a protected activity, and that a series of adverse employment actions *commenced shortly thereafter*… [but] any intervening retaliatory acts must have been *material*"); *see also Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1283 (11th Cir. 1999) (accord).[8] Plaintiff has failed to show the foregoing elements with regard to each of the actions she asserts were retaliatory. Instead, as is the case with her harassment claims, she seeks to prove causation by presenting inadmissible evidence based on speculation and hearsay, incidents she was unaware of until this lawsuit was filed, and conclusory allegations, "which is insufficient to carry [her] burden." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996).

- Since the conduct Plaintiff alleged in her September 2013 complaint occurred in 2011 and 2012, one to two years before she complained to A/C Johnson on July 23, 2013 (Doc. 31-1, at 56:19-57:17; Doc. 31-3, Ex. 1), none of the actions alleged in that complaint *followed* her

---

[8] Additionally, in the case of a corporate defendant or a large organization such as JSO, the knowledge of one decision-maker cannot be imputed to the entire organization. *See Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 800 (11th Cir. 2000) (rejecting argument that knowledge of plaintiff's protected conduct should be imputed to the corporation just because other corporate officials or supervisors had knowledge of it); *see also Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) (accord).

protected activity on July 23, 2013 or her subsequent protected activity.

- Plaintiff's September 2013 complaint was filed against Chiefs Tranquille, Lendvay and Brown and A/C Deal, not against A/C Johnson.  *Id.*  Plaintiff has failed to present any evidence that Johnson had knowledge of the complaint, which arose from events which occurred before he began supervising her, and the knowledge of other JSO supervisors cannot be imputed to him.

- Plaintiff was unaware that JSO had placed a GPS tracker on her police vehicle in 2014 until this was disclosed in discovery during this lawsuit (*see* Doc. 26, at ¶¶ 5-6; Doc. 42-1, at ¶¶ 9, 19).  Plaintiff cannot show that she was subjected to a "pattern of antagonism" from actions she did not become aware of until four years later.

- Plaintiff claims that her transfer occurred one month after she "protested Johnson's inappropriate conduct toward women" (Doc. 40, at p. 9), but she has no evidence that Johnson had anything to do with the transfer.  Doc. 31-1, at 159:17-160:13.  Nor did Johnson have anything to do with any of the other decisions JSO made regarding Plaintiff's employment after he stopped supervising her in July 2014.  Doc. 31-7, ¶ 3, Ex. A.

- Plaintiff has failed to present any evidence that, even if she verbally threatened Johnson on July 23, 2013 that she would file a complaint and confronted Johnson regarding his treatment of women in May 2014 (Doc. 42-1, ¶¶ 8, 12; Doc. 31-2, at 154:7-155:19), former Undersheriff Senterfitt, who made the decision to transfer her, or any other decision-maker had knowledge of Plaintiff's verbal complaints to Johnson when they made the decisions she claims were retaliatory.

- Hackney allegedly "berated" Plaintiff for having her phone out during roll but, but she received no discipline or formal counseling as a result, and Hackney spoke to her outside the presence of other officers.  Doc. 31-2, at 183:6-185:14.

- Plaintiff claims that when Undersheriff Ivey asked about her EEOC complaint, he insinuated the following:

  > "'Oh, you want to go to this later watch. Well, are you suing us?" …It kind of made me feel like, you know, "If we do you a favor, maybe you'll do us a favor," and I just didn't appreciate it.

  Doc. 31-2, at 186:10-191:10. However, Plaintiff did not withdraw her EEOC charge, she actually added to it, and she received the transfer she requested, so her conclusory allegations and rank speculation regarding Ivey's purported bad faith, retaliatory motive is unfounded.

- Plaintiff alleges that Ivey initiated all of the investigations or complaints against her after he questioned her about her EEOC charge (Doc. 40, pp. 18-19), but none of the investigations or complaints "commenced immediately" following Ivey's conversation with Plaintiff in June 2015. *See Entrekin, supra*. The first investigation or disciplinary matter regarding Plaintiff that Ivey was involved in was in April or May 2016, almost a year later. Doc 31-6, at 27:6-47:6; 68:21-71:20, 108:23-131:20, Ex. 1, 2, 6 and 7; Doc. 31-2, at 298:24-300:4; Doc. 31-3, Ex. 2 (p. 18, ¶ XXV). Furthermore, since Undersheriff Ivey is the final decision-maker on recommended discipline above a Level 1 written reprimand and he receives many officer complaints, it is not suspicious that other employees brought complaints about Plaintiff directly to him or that he was involved in determining whether discipline against her was warranted.[9]

- Plaintiff has failed to show that any of the intervening actions that followed her protected activity were material. When Plaintiff was asked how she had been harmed by having a GPS tracker on her police vehicle, she replied, "[b]esides feeling like my privacy had been invaded, none." Doc. 31-2, at 203:9-15.

---

[9] *See* Doc. 31-6, at 4:17-22; 7:17-18; 27:6-28:20; 29:18-30:21; 48:25-50:16; 51:23-52:6; 79:4-83:10; 105:24-106:10; 123:11-17; Doc. 31-3, Ex. 1 and 5; Doc. 31-7, at 3. Plaintiff's claim that Ivey's intent was to retaliate is also belied by the fact that he reduced or nullified the recommended discipline against her twice. *Id.*

13

### 3. Plaintiff Has Failed to Show Pretext

Even if the Court finds that Plaintiff has established a *prima facie* case of retaliation, Defendant is entitled to summary judgment because she has failed "to create a genuine issue of material fact as to whether each of [JSO's] proffered reasons is pretextual." *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000). She also cannot show that retaliatory intent was the "but for" reason for JSO's actions, a necessary element of both her retaliation and her retaliatory hostile work environment claim. *See Nassar*, 133 S.Ct. at 2528; *Gowski*, 682 F.3d at 1311-13. Nor can she show that the decision-makers did not honestly believe that the actions were justified or that, even if JSO was mistaken, the true motive was to retaliate.[10]

- In her self-serving declaration, Plaintiff claims that JSO's reason for transferring her was false because Director Michelle Cook told her that her performance was not an issue. Doc. 40, at p. 20; Doc. 42-1, at ¶ 14. However, Johnson had to reprimand or counsel Plaintiff multiple times and she conceded that the facts listed in the written counseling he gave her for improper radio communications were correct. Doc. 32-1, at 155:16-156:19; Doc. 32-2, at 261:2-263:12; Doc. 31-3, Ex. 24 and 25. Thus, as Plaintiff was counseled for "failing to conform to work standards," she cannot show that Senterfitt's motive for transferring her was retaliatory. Doc. 31-10, at ¶¶ 5-6. This was a reason that might have motivated a reasonable employer. *See Chapman*, 229 F.3d at 1030.

---

[10] *See E.E.O.C. v. Total Sys. Servs.*, 221 F.3d 1171, 1176–77 (11th Cir. 2000) (appropriate inquiry in determining whether employer's reason was pretext, is whether the employer's decision was based on a "good faith belief" that the employee had done wrong, not whether the wrong actually was committed); *see also Chapman*, 229 F.3d at 1030 (courts do not to sit as a "super-personnel department" that unduly scrutinizes an employer's honestly held beliefs which formed the basis for its decision).

- Plaintiff also argues that JSO's reasons were false because she never received training after she was transferred. Doc. 40, at p. 20.[11] However, since Plaintiff admitted that she requested training (Doc. 42-1, at ¶ 14) and it is undisputed that there is no opportunity for lieutenants to receive training from their supervisors during the midnight shift because the assistant chiefs are all off duty, Plaintiff cannot show that Senterfitt's reason was false and the true motive was to retaliate. *Id.*, at ¶¶ 5-7.

**WHEREFORE**, for all the reasons stated herein and in Defendant's Motion for Summary Judgment (Doc. 30), Defendant, the City of Jacksonville, respectfully requests that the Court grant its motion for summary judgment.

Dated: December 20, 2018                **OFFICE OF GENERAL COUNSEL**

/s/ *Wendy Byndloss*
**WENDY E. BYNDLOSS**
**ASSISTANT GENERAL COUNSEL**
Florida Bar No. 0048718
Email:  WByndloss@coj.net
**SEAN B. GRANAT**
**DEPUTY GENERAL COUNSEL**
Florida Bar No. 0138411
Email: SGranat@coj.net
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
(904) 630-1700 - Telephone
(904) 630-1316 – Facsimile
*Attorneys for Defendant,*
*City of Jacksonville*

---

[11]Furthermore, because a decision-maker provides "a different or alternate reasons does not itself show pretext." *Sapp*, 676 Fed.Appx. at 883; *see also  Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007) (plaintiff did not demonstrate pretext because the employer's three reasons were not necessarily inconsistent and it "could have relied on all three reasons simultaneously, regardless of whether it emphasized one over the others at a given time").

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 20th day of December, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record herein.

                */s/ Wendy Byndloss*
                Assistant General Counsel